# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ESTATE OF CHRISTOPHER MAYNARD,<br>*deceased, by and through its administrator,*<br>ARTHUR MAYNARD<br><br>Plaintiff,<br>v.<br><br>ALLEN MACKLEY and CMIVFX, INC.,<br>*an Oregon Corporation*<br><br>Defendants. | : : : : : : : : : : : : : : | Civil Action No. 3:17-cv-01659-BRM-LHG<br><br><br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is an Order to Show Cause[1] (ECF No. 7) why Plaintiff Estate of Christopher Maynard (the "Estate" or "Plaintiff") should not be granted a preliminary injunction enjoining Defendants Allen Mackley ("Mackley") and CMIVFX, Inc. ("CMIVFX") (collectively, "Defendants") "from, *inter alia*, the continued misappropriation of the Estate's intellectual property, unlawful access to the Estate's computer data, and the conversion of the Estate's payment accounts." (Pl.'s Mot. for TRO (ECF No. 6-1) at 1.) Pursuant to Federal Rule of Civil Procedure 78(a), the Court heard oral argument on May 3, 2017. Upon reviewing the papers submitted by the parties and considering the arguments of counsel, for the reasons set forth below, Plaintiff's application is **DENIED**.

---

[1] On March 10, 2017, Plaintiff filed the Complaint (ECF No. 1) and a motion for an ex parte temporary restraining order. (ECF No. 2.) The Clerk's office twice rejected Plaintiff's motion for a temporary restraining order, because the motion did not contain a proper electronic signature. (*See* Clerk's Quality Control Messages of March 13, 2017 and March 30, 2017.) The motion was filed properly on March 31, 2017. (ECF No. 6.) On April 10, this Court denied the motion and simultaneously issued the pending Order to Show Cause. (ECF No. 7.)

# I. BACKGROUND

This matter involves Mackley's alleged appropriation of the tangible and intangible assets of CMI Studios, LLC, d/b/a "cmiVFX" ("CMI"), a visual effects company.[2] Arthur Maynard ("Arthur") is the administrator of the Estate, which owns all of CMI's assets. According to Plaintiff, Mackley, a former contractor of CMI, used the premise of a tentative agreement to buy CMI to gain access to CMI's PayPal payment accounts, intellectual property, and website. Plaintiff alleges Mackley then repudiated the tentative agreement, changed the PayPal account passwords and PIN numbers, and used a newly created entity, CMIVFX, to seize control of CMI's assets.

Plaintiff contends the Estate and Mackley had negotiated the sale of CMI to Mackley beginning in June 2016.[3] (ECF No. 1 ¶¶ 33-45.) After a series of proposals, Mackley and the Estate tentatively agreed to a transaction in which a newly formed corporation, CMIVFX, would acquire CMI. (*Id.* ¶¶ 46-47.) Mackley would hold a 50% interest in CMIVFX, Arthur would hold a 25% interest, and 25% would be held as treasury stock. (*Id.* ¶ 47.)

Mackley requested access to CMI's PayPal account to review the company's transactions, and Arthur granted access for the limited purpose of that review. (*Id.* ¶¶ 59-60.) Plaintiff alleges Arthur later tried to access the account but could not, as the login information had been changed. (*Id.* ¶ 67.) Arthur immediately contacted Mackley about the change, and Mackley claimed he had changed the login information because he had more rights to CMI than Arthur or anyone else. (*Id.* ¶¶ 68-69.) Arthur and Mackley began negotiations and appeared to resolve this dispute, and Mackley provided Arthur with the new login information to the PayPal account. (*Id.* ¶¶ 71-74.)

---

[2] Christopher Maynard ("Christopher"), the founder and sole member of CMI, died intestate on May 27, 2016.

[3] The Complaint alleges Christopher's boyhood friend, Brian Chiorello ("Chiorello"), was initially a party to these negotiations as a planned partner of Mackley, but after negotiations stalled Mackley resumed negotiations with the Estate without Chiorello. (ECF No. 1 ¶ 54.)

However, the login information Mackley provided to Arthur gave Arthur only limited access to review the account and did not allow for any control over the account. (*Id.* ¶ 74.)

Plaintiff alleges Defendants then filed an application with the United States Patent and Trademark Office ("USPTO") seeking to register a mark for CMIVFX. (*Id.* ¶ 75.) Plaintiff alleges the application was willfully false, as it utilized CMI's tradename, "cmiVFX," registered a mark substantially similar to CMI's, and directed USPTO to CMI's website. (*Id.* ¶¶ 76-78.) Plaintiff contends neither Mackley nor CMIVFX had the right or authority to use CMI's intangible property in the application, as there was no formal agreement regarding the transfer of CMI's assets. (*Id.* ¶¶ 79-80.) Plaintiff further maintains Defendants' application to USPTO falsely claimed no other party had rights to use CMI's mark. (*Id.* ¶ 81.) Further, Plaintiff alleges, Mackley knew this claim was false, as he had acknowledged Arthur's rights to CMI as administrator of the Estate one day before filing the application. (*Id.* ¶ 82.)

From August through December of 2016, Mackley and the Estate continued to negotiate the terms of the transaction, the structure of the new corporation, and Mackley's acquisition of certain storage devices containing CMI files. (*Id.* ¶¶ 83-89.) Plaintiff alleges Mackley repudiated any agreement and refused to return tangible and intangible property belonging to the Estate. (*Id.* ¶¶ 89-90.) Plaintiff filed the Complaint and ex parte motion for a temporary restraining order in this action on March 10, 2017.

## II. LEGAL STANDARD

"Preliminary injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances.'" *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)). "A plaintiff seeking a preliminary injunction must

establish that he is [1] likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Ferring*, 765 F.3d at 210 (quoting *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)). The movant bears the burden of showing these four factors weigh in favor of granting the injunction, and a failure to establish any one factor will render a preliminary injunction inappropriate. *Id.*

## III. DECISION

Plaintiff has not met the significant threshold for a preliminary injunction. Plaintiff has the burden to prove the likelihood of success on the merits and fails to demonstrate this factor. A party proves a likelihood of success on the merits by demonstrating a "reasonable *probability* of eventual success in the litigation . . . ." *South Camden Citizens in Action v. N.J. Dep't of Envt'l. Prot.*, 274 F.3d 771, 777 (3d Cir. 2001) (emphasis added). Plaintiff has not shown its success is probable, as Defendants refute much of Plaintiff's account with similarly plausible arguments.

Defendants, who acknowledge Plaintiff is a 25% shareholder in the business (Decl. of Allen Mackley (ECF No. 12) ¶¶ 14-19), characterize the dispute underlying this litigation as one between business partners. (Defs Opp. (ECF No. 11) at 11.) Defendants maintain Mackley has abided by the terms Arthur himself proposed and to which Mackley agreed on June 20, 2016. (*Id.* at 1-2.) The June 20-22, 2016 email exchange between Mackley and Arthur suggests the parties agreed to the basic elements of a deal: (1) Mackley would have control over the operations of the company; (2) the company would be known as CMIVFX; (3) the company would be incorporated in Oregon, the state where Mackley resides; (4) the stock would be split with 50% going to Mackley, 25% to Christopher's estate, and 25% held as treasury stock; and (5) Arthur would be listed as the company's secretary/treasurer. (ECF No. 12-4 at 2-4.) While the parties later disagreed

about several issues (*see, e.g.*, ECF No. 1-5), the June 20-22, 2016 email exchange indicates the parties had a meeting of the minds about going into business together and how that business would operate.

Defendants contend this dispute arose after Mackley rejected Arthur's proposal that CMIVFX pay Arthur an annual royalty of 15% of CMIVFX's revenues. (ECF No. 11 at 10.) Defendants maintain the parties never discussed such a royalty and Arthur first proposed it in a November 29, 2016 email—more than five months after the parties agreed via email to the terms of the new business. (ECF No. 12 ¶ 32.) Defendants note Plaintiff's own submissions to the Court reveal the proposed royalty was not among the terms the parties discussed and under which Mackley operated CMIVFX after June 20, 2016. (*See* ECF No. 11 at 9-10 and ECF No. 12 ¶ 33.)

Defendants refute Plaintiff's arguments that it will likely succeed on its copyright claims by maintaining Mackley had at least an implied license to use any and all assets that were part of the business. *See Doebler's Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 824 (3d Cir. 2006), *as amended* (May 5, 2006) ("Although it appears that there is no express written license agreement between the parties, a trademark license can also be implied.") "An implied license in fact arises out of the objective conduct of the parties, which a reasonable person would regard as indicating that an agreement has been reached." *Birthright v. Birthright, Inc.*, 827 F.Supp. 1114, 1134 (D.N.J. 1993). Defendants argue the June 20, 2016 email agreement, as well as Mackley's past work with Christopher, gave Defendants an implied license, if not actual ownership, of the intellectual property that became Plaintiff's property upon Christopher's death. (ECF No. 11 at 14.)

As each party has proffered plausible arguments in its favor, Plaintiff has not satisfied the burden necessary to show a likelihood of success on the merits.

Plaintiff has also failed to demonstrate "that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22. Plaintiff's own submissions to the Court demonstrate Mackley has operated CMIVFX and reported to Arthur on developments in the company. (ECF No. 1-6 at 2-3.) Defendants also argue—persuasively—Plaintiff's assertion irreparable harm is likely is belied by the fact Plaintiff filed this action more than nine months after it alleges Defendants first "repudiated" the parties' agreement and almost three months after it alleges Defendants "repudiated" the agreement a second time. (ECF No. 11 at 15.) *See Lanin v. Borough of Tenafly*, 515 Fed.Appx. 114, 117 (3d Cir. 2013) (stating a plaintiff's delay in seeking a preliminary injunction weighs against finding the drastic remedy afforded by an injunction is warranted).

Plaintiff has also failed to demonstrate the balance of equities tip in its favor. There is no evidence Defendants are damaging the brand or any goodwill CMI developed, and it is in both parties' interest to have the business succeed. An injunction would deprive Mackley of his livelihood, while a denial of the injunction preserves the status quo until the disputes between the parties are resolved. If it is determined Mackley has used CMI's intangible property without legal right to do so, money damages would provide an adequate remedy to the Estate. *See Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989) (finding a preliminary junction is not appropriate when money damages can compensate a plaintiff for its injuries).

Finally, Plaintiff has not demonstrated a preliminary injunction would be in the public interest. Defendants have operated the business for months, and the parties agree there is a customer base using CMIVFX's website. Those customers would be better served by a preservation of the status quo. While Plaintiff's counsel argued preserving the status quo would "condone [Defendants'] unlawful distribution of [CMI's] assets" (Tr. of May 3, 2017 Oral Arg. at 6:9-11), the Court must weigh the effect of denying an injunction on the public, not the parties.

*See Cont'l Group, Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 358 (3d Cir. 1980) ("[T]he effect on public interest considered by this Court [is] not that justice be done, but that specific acts presumptively benefiting the public not be halted until the merits [can] be reached and a determination made as to what justice require[s]."). Though Plaintiff's counsel maintained at oral argument that Arthur could run the company, he acknowledged there would be a delay of indeterminate length. (Tr. of May 3, 2017 Oral Arg. at 4:15-5:5.) Plaintiff has not shown, therefore, that a preliminary injunction would serve the public interest.

## IV. CONCLUSION

A preliminary injunction is an extraordinary remedy to be used in limited circumstances, and the Court does not find Plaintiff has met its burden to demonstrate all four factors weigh in favor of an injunction. Accordingly, Plaintiff's motion is **DENIED**.


**Date: May 12, 2017**                                        */s/ Brian R. Martinotti*
                                                              **HON. BRIAN R. MARTINOTTI**
                                                              **UNITED STATES DISTRICT JUDGE**